E-Filing

Pamela Drawsand
P. O. Box 717
Oakland, California
(510) 533-9919
Plaintiff

FILED

SEP - 1 2010

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

IFP

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### DIVISION

ADR

|  |  |
|---|---|
| PAMELA DRAWSAND, | Case No.: **C10-03937** |
| Plaintiff, | **COMPLAINT** |
| vs. | **DEMAND FOR JURY TRIAL** |
| F.F. PROPERTIES, L.L.P., FAIRFIELD BARRINGTON PROPERTIES, MONTELENA APARTMENT HOMES, DEBRA LNU, CHRISTINA GIBBENS, MICHAL NAULT, DIANE DWYER, BRIAN FITZGERALD, DAVID CABRERA, IAN BALDIBAD, ORASE LNU, ERICKSEN ABUTHNOT, ERICKSEN, ARBUTHNOT, KILDUFF, DAY & LINDSTROM, JOSEPH J. MINOZA, JODIE G. STEINBERG, KIMBALL, TIREY, & ST. JOHN, SHAWN BANKSON, JANE CREASON, STEPHEN MODEFFERI, STACEY RUBIN, ERICA GARCIA, JON ROLEFSON, LISA IMUS, ALAMEDA COUNTY HOUSING AUTHORITY, CHRISTINA GOUIB, RON DION, SHARON DECRAY, NAVDEEP BARN, IVEN MICHAEL, GARCIA, ROWENA | |

ANN REYES RIVERA, JEFFERY
LOUGIN, KENISHA PATRICE
STEPHENSON-LOUGIN, ALEXANDER
CONCEPCION, KATHY LYNN
CONCEPCION, AND DOES 1-5,

     Defendants.

## JURISDICTION AND VENUE

1.     This is a civil action brought by plaintiff pursuant to the Fair Housing Act, 42 U.S.C. § 3601 et seq., the Civil Rights Act of 1866, 42 U.S.C. §§ 1981, 1982, the Fair Housing Act Amendments of 1988 (FHAA), the Civil Rights Act of 1871, the Civil Rights Act of 1968, 42 U.S.C. § 1983; the Unruh Civil Rights Act; the Rehabilitation Act of 1973, 29 U.S.C. 794; the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. §§ 12132, 12182, 12203; the United States Constitution, particularly the First, Fourth, Seventh, Ninth and Fourteenth Amendments, the Due Process Clause and Equal Protection Clause; Article I, section 1, 2a., 7(a), 13, and 16 of the California Constitution; and Govt.Code §§ 12955(f) (retaliatory eviction); 12955(m) (disability discrimination); 12926(j)-(m) (disability discrimination); 12927(c)(1) (disability harassment); 12948 (denial of rights); and 12955(a)-(d) (housing, race, and sex discrimination and harassment).

2.     This Court has subject matter jurisdiction of the federal claims asserted in this action under 28 U.S.C. §§ 1331, 1343, 1345; 42 U.S.C. §§ 3612, 3613, 3614; Walter v. Darby Town Houses, Inc., 395 F. Supp. 553, E.D. Pa. 1975, and Higbee v. Starr, C.A. 8 (Ark.) 1983, 698 F.2d 945.

California.

7. Defendant, DEBRA LNU (hereinafter "Debra") is a managing agent, employee, and/or representative of MAH, and at all times relevant to this complaint.

8. Defendant, CHRISTINA GIBBENS (hereinafter "Gibbens"), is a managing agent, employee, and/or representative of MAH, and at all times relevant to this complaint.

9. Defendant, BRIAN FITZGERALD (hereinafter "Fitzgerald"), is a managing agent, employee, and/or representative of MAH, and at all times relevant to this complaint.

10. Defendant, DIANE DWYER (hereinafter "Dwyer"), is a managing agent, employee, and/or representative of MAH, and at all times relevant to this complaint.

11. Defendant, MICHAL NAULT (hereinafter "Nault"), is managing agent, employee, and/or representative of MAH, and at all times relevant to this complaint.

12. Defendant, DAVID CABRERA (hereinafter "Cabrera"), is an employee, and/or representative of MAH, and at all times relevant to this complaint.

13. Defendant, IAN BALDIBALD (hereinafter "Baldibald"), is an employee, and/or representative of MAH, and at all times relevant to this complaint.

14. Defendant, ORASE LNU (hereinafter "Orase"), is an employee, and/or representative of MAH, and at all times relevant to this complaint.

15. Defendant, ERICKSEN ARBUTHNOT, (hereinafter "Ericksen"), doing business as ARBUTHNOT, KILDUFF, DAY & LINDSTROM, INC., is an agent, employee, and/or representative of F.F. Properties, L.P., and/or corporation

organized under the laws of the State of California, and at all times relevant to this complaint.

16. Defendant, JOSEPH J. MINOZA (hereinafter "Minoza"), is an agent, employee, and/or representative of ERICKSEN ARBUTHNOT and at all times relevant to this complaint.

17. Defendant, JODIE G. STEINBERG (hereafter "Steinberg") is an agent, employee, and/or representative of ERICKSEN ARBUTHNOT and at all times relevant to this complaint.

18. Defendant, KIMBALL, TIREY & ST. JOHN, L.P., (hereafter "Kimball"), is an agent, employee, and/or representative of FF Properties, a limited partnership organized under the law of the State of California, and at all times relevant to this complaint.

19. Defendant, SHAWN BANKSON (hereinafter "Bankson"), is an agent, employee, and/or representative of Kimball, Tirey & St. John, L.P., and at all times relevant to this complaint.

20. Defendant, JANE CREASON (hereinafter "Creason"), is an agent, employee, and/or representative of Kimball, Tirey & St. John, L.P., and at all times relevant to this complaint.

21. Defendant, STEPHAN MODEFFERI (hereinafter "Modefferi"), is an agent, employee, and/or representative of Kimball, Tirey & St. John, L.P., and at all times relevant to this complaint.

22. Defendant, STACY RUBIN (hereinafter "Rubin"), is an agent, employee,

and/or representative of Kimball, Tirey & St. John, L.P., and at all times relevant to this complaint.

23. Defendant, ERICA GARCIA (hereinafter "Garcia"), is an agent, employee, and/or representative of Kimball, Tirey & St. John, L.P., and at all times relevant to this complaint.

24. Defendant, JON ROLEFSON (hereinafter "Rolefson"), is an agent, employee, and/or representative of the State of California, and at all times relevant to this complaint.

24. Defendant, LISA IMUS (hereinafter "Imus"), is an agent, employee, and/or representative of the State of California, and at all times relevant to this complaint.

25. Defendant, ALAMEDA COUNTY HOUSING AUTHORITY (hereinafter "HACA"), is a corporate body and division of the U.S. Department of Housing and Urban Development organized in accordance with the provisions of the laws of the State of California, and at all times relevant to this complaint.

26. Defendant, CHRISTINA GOUIB (hereinafter "GOUIB"), is an agent, employee, and/or representative of the Alameda County Housing Authority organized in accordance with the provisions of the laws of the State of California, and at all times relevant to this complaint.

27. Defendant, RON DION (hereinafter "Dion"), is an agent, employee, and/or representative of the Alameda County Housing Authority organized in accordance with the provisions of the laws of the State of California, and at all times relevant to this complaint.

28. Defendant, SHARON DECRAY (hereinafter "DeCray"), is an agent, employee, and/or representative of the Alameda County Housing Authority organized in accordance with the provisions of the laws of the State of California, and at all times relevant to this complaint.

29. Defendant, NAVDEEP BARN (hereinafter "Barn"), is an agent, employee, and/or representative of the U.S. Department of Housing and Urban Development, organized in accordance with the provisions of the laws of the State of California, and at all times relevant to this complaint.

30. Defendant, RVEN MICHAEL GARCIA (hereinafter "Michael Garica"), is an individual, former tenant of MAH, and at all times relevant to this complaint.

31. Defendant, ROWENA ANN REYES RIVERA (hereinafter "Rivera") is an individual, former tenant of MAH, and at all times relevant to this complaint.

32. Defendant, JEFFERY LOUGIN (hereinafter "Lougin"), is an individual, former tenant of MAH, and at all times relevant to this complaint.

33. Defendant, KENISHA PATRICE STEPHENSON-LOUGIN (hereinafter "Stephenson-Lougin"), is an individual, former tenant of MAH, and at all times relevant to this complaint.

34. Defendant, ALEXANDER CONCEPCION (hereinafter "A. Concepcion"), is an individual, former tenant of MAH, and at all times relevant to this complaint.

35. Defendant, KATHY LYNN CONCEPCION (hereinafter K. Concepcion"), is an individual, former tenant of MAH, and at all times relevant to this complaint.

30. DOES 1-7 names are unknown to Plaintiff at this time and Plaintiff

promises to amend this complaint when she becomes aware of each Does name and address.

37.     Plaintiff sues each and all Defendants and Does in both their individual and official capacities.

38.     At all times material to this Complaint, each Defendant and Doe acted under color of law of the State of California, in the County of Alameda, in the City of Hayward and Oakland.

## FACTUAL ALLEGATIONS

39.     Montelena Apartment Homes, 655 Tennyson Road, Hayward, California, is a multiunit apartment complex with 188 units.

40.     On April 19, 2006, Plaintiff went to the MAH to inquire as to the availability of a two-bedroom rental housing unit.

    a.  She met with defendant Gibbens.

    b.  Defendant Gibbens told this plaintiff that there were no units available for Section 8 recipients and no units were expected to be available until after a year and half.

    c.  Defendant Gibbens refused to provide an application form to and would only allow plaintiff's name to be placed or caused to be placed on a waiting list.

    d.  Plaintiff requested to speak with someone regarding the waiting list and spoke with defendant Debra LNU, who was the regional manager.

41.     On April 21, 2006, defendant Nault contacted plaintiff informing her of two available units for Section 8 recipients. were available and went the through the preparation for a lease under the Section 8 program after speak with the regional

manager, Debra. MAH assigned unit #3208 to plaintiff.

42. On May 12, 2006, plaintiff signed a 12-month lease agreement with MAH for unit #3208 located at 28650 Cork Oak Lane, Hayward, California.

43. Plaintiff Drawsand paid and defendants accepted a $100 deposit and $214 prorated rent for May 2006. Plaintiff's rent per month totaled $1,017, which plaintiff paid $314.00 and Section 8 paid $703 subsidized under the Section 8 program as agreed.

44. In June 2006, plaintiff informed management of unusual noises coming from unit #3308 located directly above plaintiff's unit, which Jeffery Lougin and Kenisha Patrice Stephenson-Lougin (hereinafter "the Lougins") abided. After doing so, defendant Nault requested plaintiff to complete an application for Below Market Rent (BMR), which was not a requirement for Section 8 participants. Plaintiff informed Section 8 Supervisor, Sharon DeCray, who advised plaintiff that she did not need to provide this information because of her Section 8 status. Defendants MAH and Nault made no effort to resolve the noise issue.

45. On or about August 26, 2006, plaintiff contacted defendants MAH and Nault about the ongoing noises coming from unit #3308. Defendant Nault insisted that plaintiff contact local law enforcement, to wit, Hayward Police Department (hereinafter "HPD") because there was nothing that MAH could do. Thereafter, plaintiff learned of and contacted the patrol security, to wit, Intervention Agency (hereinafter "Intervention").

46. On September 4, 2006, the Lougins began more aggressive harassment

toward plaintiff to include, but not limited to, stalking, threatening, following, and assaulting plaintiff as she returned to her unit each and every day and night.

47. On or about September 8, 2006, the Lougins appeared at plaintiff's door demanding that she come out, assaulting and threatening her, and attempted battery her when she did. When escorted away by Intervention's Captain De La Rosa, defendant Lougin said, "Its on!"

48. On or about September 16, 2006, several days after the above incident, plaintiff found her vehicle, to wit, 2005 Suzuki GS500f, damaged in the apartment complex parking lot. Plaintiff informed defendants MAH and Nault. Plaintiff filed a vandalism report with HPD online. Defendant Nault acknowledged seeing plaintiff's damaged vehicle in the parking lot.

49. Throughout September 2006, the Lougins continued to harass, stalk, and threaten plaintiff when she arrived and departed from her unit.

50. On October 14, 2006, at or around 6:30 a.m., defendant Nault and Stephenson-Lougin assaulted and battered plaintiff in MAH's leasing office. Plaintiff contact HPD, filed a report, and sought emergency care for her injuries.

51. On November 7, 2006, defendants MAH and Nault continued that harassment by hiring defendant Kimball to serve plaintiff with a Three-Day (3-Day) Notice to Comply with Covenant or Quit (hereinafter "Comply Notice") on behalf of FF Properties stating plaintiff breached her lease agreement.

52. On November 26, 2006, plaintiff filed a complaint for damages against MAH, the Lougins, and Fairfield Barrington Properties for assault and battery among

other things.

53.     On December 5, 2006, plaintiff filed Request for Orders to Stop

Harassment (hereinafter "TROs") against the Lougins in the California Superior Court of

Alameda County in the City of Hayward.

54.     On December 15, 2006, plaintiff served the TROs against the Lougins. On

the same day, defendant Nault, on behalf of MAH, prepared a 60-Day Notice of

Termination of Tenancy (hereinafter "Termination Notice") to evict plaintiff without

cause.

55.     On December 20, 2006, the court granted the TROs against the Lougins for

a period of one year.

56.     On January 27, 2007, defendant Nault served the Termination Notice dated

December 15, 2006 on plaintiff by attacking it to the door of her premises with the

contents in plain view to others.

57.     On January 29, 2007, plaintiff served defendants MAH, Nault, and the

Lougins with her civil complaint. Thereafter, defendants MAH and Nault began

harassing plaintiff with a series of Notice to Enter (hereinafter "Enter Notices") for a

period of February 1 through March 2. The notices informed plaintiff that defendant

MAH will enter her unit in order to make "necessary repairs". The notices did not

specify the "necessary repairs" that defendants MAH and/or its agents, employees, and/or

representatives intend to make.

58.     On February 4, 2007, plaintiff faxed copies of the TROs, the complaint, and

other documents to Section 8 Supervisor, defendant DeCray, with a letter questioning if

defendant MAH and it employees, agents, representatives, etc., could enter her unit without her consent, expressed and/or implied, especially, when she is not home to make "necessary repairs" unspecified to her. Defendant DeCray informed plaintiff that defendants MAH and/or Nault to include its agents, employees, representatives, etc. could not enter her unit without her permission and/or consent, expressed and/or implied, as well as in her absence. In addition, DeCray changed plaintiff's Section 8 specialist to defendant Barn. Thereafter, plaintiff spoke with Barn who told her that if defendant MAH evicts her she would become ineligible for the Section 8 program.

59. During February 2007, defendants MAH, Nault, Cabrera, and Baldibad continued harassing plaintiff by entering her unit repeatedly without her consent, expressed and/or implied.

60. On March 1, 2007, defendants MAH, Nault, Cabrera and Baldibad changed plaintiff's locks on her door thereby locking her out of the unit.

61. On March 2, 2007, defendants MAH, Nault, Cabrera and Baldibad changed plaintiff's locks on her door thereby locking her out of the unit a second time. Plaintiff contacted HPD and filed a report.

62. In April 2007, defendant MAH changed residential managers, to wit, defendant Dwyer, and she acquired a new assistant, Cynthia Laurent (hereinafter "Laurent"), whom plaintiff informed of the harassment by the Lougins among other things.

63. In May 2007, plaintiff returned one evening to find her vehicle vandalized, to wit, destruction of the emblem to her 1986 Mercedes Benz 300E. Plaintiff contacted

HPD who came out and wrote a report.

64. In June 2007, defendant Lougin's brother, Darren Lougin, began harassing and stalking plaintiff each and every morning when she departed her unit.

65. In July 2007, plaintiff heard defendant Lougin ask, "Do you see any lights on at all?' Plaintiff had complained of being under surveillance by the Lougins to defendants MAH, Nault, and Dwyer in the past.

66. In August 2007, plaintiff witnessed a display of a room in her unit on the Lougins flat screen television from master bedroom window while driving into the parking and reported to defendants MAH and Dwyer. Defendant Dwyer instructed defendant Cabrera to caulk all holes found in plaintiff's ceiling, which were her bedrooms, dining and living rooms. Thereafter, defendants Dwyer and Barn conspired to evict plaintiff by delaying changes to her Section 8 status causing her to owe defendant MAH for rent, which defendant Dwyer sent several Three Day Notice Pay or Quit.

67. In September 2007, defendant MAH and Ms. Laurent found the Lougins playing the music very loud after plaintiff complained among other things.

68. On October 31, 2007, defendant Lougin attempted to run plaintiff over with his vehicle in the parking lot almost causing her to have a serious accident as she swerved to avoid a head-on collision. Plaintiff contacted HPD. HPD arrived and provided plaintiff with a photo line up to identify Lougin. She did. However, HPD did not investigate further.

69. On November 1, 2007, plaintiff notified defendants MAH and Dwyer in writing that she would file a lawsuit for any more harassment, threats, stalking, assaults

and/or batteries committed against her by the Lougins.

70.     On November 13, 2007, defendant Lougin walked up to plaintiff and punched her in her face causing severe neck, shoulder, and tooth problems. Plaintiff filed a police report and went to the emergency room of St. Rose Hospital.

71.     On November 29, 2007, defendants MAH, it agents, employees, and representatives began to retaliate against plaintiff by creating a "water leak" in her unit through the Lougins unit.

72.     On November 30, 2007, plaintiff entered her unit to find it leaking. Defendant Cabrera cut three unnecessary large holes, to wit, LW15"x12", in her ceiling in random areas pretending to locate the leak. After doing so, defendant Cabrera left plaintiff's unit and did not return to repair the holes in the ceiling for six months.

73.     On December 4, 2007, defendant Barn finally changed plaintiff's Section 8 status allowing for a reduced rental payment to defendant MAH per month after a four-month refusal to correct and effect the changes, which, during the period, defendant Dwyer sent plaintiff several eviction notices to pay rent or quit due to not fault of plaintiff, in their conspiracy to evict plaintiff.

74.     On January 5, 2008, defendant MAH moved new tenants into unit #3308, to wit, Rven Michael Garcia and Rowena Ann Reyes Rivera, while plaintiff's ceiling remained unrepaired and possible relatives to defendant MAH staff in order to continue their retaliation and harassment.

75.     During January 2008, other tenants, friends of the Lougins, began harassing plaintiff by leaving a note at her door with the expletive "b-i-t-c-h" written on it and

vandalized her vehicle, to wit, a 2002 Mercedes Benz S430, by inscribing the same expletive on the hood spanning a space of 8"x2'. Plaintiff notified defendants MAH and Dwyer. Plaintiff contacted HPD regarding the incidents.

76.     On February 11, 2008, plaintiff made her final inquiry to defendants MAH and Dwyer about repairing her ceiling. Because defendant MAH refused to make repairs as agreed, plaintiff filed a complaint with the Department of Housing and Urban Development (hereinafter "HUD").

77.     On or about February 16, 2008, plaintiff contacted defendants MAH and Dwyer about a nuisance caused by the new tenants of unit #3308, which related to loud noises emanating throughout her unit at all hours of the day and night causing plaintiff severe sleep deprivation, a constructive eviction, privacy violations, harassment among other things starting as early as 4:30 a.m. and continuing throughout the day.

78.     In March 2008, HUD forwarded plaintiff's complaint for disability discrimination to the California Department of Fair Employment and Housing (hereinafter "DFEH").

79.     On April 24, 2008, DFEH notified defendants MAH and Dwyer of plaintiff's complaint for disability discrimination. Thereafter, defendant Dwyer resigned. In addition, plaintiff dismissed without prejudice her complaint against defendant MAH per legal advisement.

80.     On May 1, 2008, defendant MAH hired defendant Brian Fitzgerald to manage its property.

81.     On May 2, 2008, plaintiff met defendant Fitzgerald and Ms. Laurent

noticed them of her the nuisances by #3308 tenants and vandalism to her personal property.

82.     On May 14, 2008, defendants MAH and Fitzgerald decided to make the repairs to plaintiff's ceiling they failed to provide in November and/or December 2007.

83.     On June 6, 2008, plaintiff noticed defendants MAH and Fitzgerald of her intention for file a lawsuit if defendant MAH did not resolve her issues.

84.     On June 16, 2008, plaintiff and defendants MAH, Gibbens, and Fitzgerald mediated with DFEH regarding her disability discrimination complaint and reached a settlement regarding incomplete repairs to her unit impacting her disability.

85.     On July 9, 2008, plaintiff filed and served defendants MAH, Michael Garcia, Riveria, A. Concepcion, and K. Concepcion with a lawsuit for nuisance among other things.

86.     In July 2008, defendant Ericksen Arbuthnot assigned defendant Steinberg to represent defendant MAH. Defendant Steinberg instructed defendant MAH to only address emergency repairs requested by plaintiff.

87.     On August 20, 2008, plaintiff allowed defendant Orase LNU to enter her unit to witness the nuisance created by tenants of units #3308 and #3108. Defendant Orase LNU thereafter informed defendants MAH and Fitzgerald, among others.

88.     On August 23, 2008, defendants MAH, Fitzgerald, and Cabrera unlawfully forced entry into plaintiff's unit (#3208) under the guise of an "emergency water leak" in unit #3108 located beneath plaintiff's unit when none existed. Defendants Fitzgerald and Cabrera entered plaintiff's bedroom sexually assaulting and violating her privacy.

89.     On August 31, 2008, plaintiff deposited her September 2008 rent for $537.00 with defendant Orase in defendant MAH leasing office.

90.     On September 7, 2008, defendants MAH, its agents, employees, representatives, etc. returned plaintiff's rental payment by taping it to her door in a white envelope.  Plaintiff returned the rent through defendant MAH rent 'drop box' located at the defendant MAH Leasing Office, 655 Tennyson Road, Hayward, California.

91.     On September 8, 2008, at or about 10:30 a.m., plaintiff found her rental payment attached to her unit's door in a white envelope again.  Plaintiff returned her rent through defendant MAH's 'rent drop box' located at the leasing office.  Plaintiff the unit and returned to find the rental payment returned a third time taped to her door.

92.     On September 9, 2008, at or about 9:20 a.m., plaintiff returned her rental payment to defendant MAH by placing it in defendant Orase's hand.  Plaintiff questioned why defendant MAH refused her rent.  Later, plaintiff returned to find her rental payment taped to her door with 'VOID' written across it.

93.     On or about September 12, 2008, plaintiff received legal advice regarding defendant MAH actions with her rental payment for September 2008, to wit, an attempt to evict her.  Counsel advised Plaintiff to put the money in an account and notice defendant MAH by certified mail of it.

94.     On September 15, 2008, plaintiff sent a letter by certified mail to defendant MAH regarding the September 2008 rental payment being in an account and her plan to do the same with subsequent rental payments until it explained its refusal of her September rental payment.

95.     On September 24, 2008, defendant F.F. Properties and MAH served plaintiff with a Three-Day (3) Notice to Comply with Covenant or Quit (hereinafter "Notice 3") alleging she changed her locks without defendant MAH's consent.  In Notice 3, defendant F.F. Properties and MAH demanded that plaintiff provide them with a key to her unit or suffer eviction.  Defendant MAH changed plaintiff locks and keys when it unlawfully entered her unit on August 23, 2008.

96.     On September 24, 2008, plaintiff purchased a new lock with key to give defendants F.F. Properties and MAH in order to avoid an eviction.

97.     On September 27, 2009, plaintiff had a third party, to wit, William Mask, to present the key to her unit and a letter outlining conditions to which defendants F.F. Properties and MAH could enter her unit to defendant Fitzgerald, which plaintiff and Mr. Mask had signed.  Defendant Fitzgerald accepted the key and wrote his name in the signature block on the Confirmation Page.  Plaintiff returned to her unit and placed the letter faced down on her dining table.

98.     On September 28, 2008, at or about 7 a.m., plaintiff entered her dining room and noticed the Confirmation Page turned faced up on her dining table.  Plaintiff became alarmed, contacted the HPD, and filed a report.  In addition, plaintiff contacted ADT and ordered an alarm system be installed in her unit.  Later that day when plaintiff left her unit, defendant Cabrera stood outside another tenant's unit (#3101) and watch plaintiff for five minutes.  When plaintiff entered her vehicle and pulled into another parking stall to check her voicemail, the tenant of unit #3101 came over to plaintiff's car, began pounding on her car window using expletives, and demanding that she step out of

her vehicle.  While this occurred, defendant Cabrera drove by slowly watching plaintiff.
Plaintiff contact HPD, but they did not respond.

On October 1, 2008, plaintiff had ADT install and alarm system in her unit due to
defendant Fitzgerald entering her unit on September 28, 2008, after giving him a key
pursuant to Notice 3.  Plaintiff notified HPD about the incident.

99.     On October 5, 2008, defendant MAH served plaintiff with a Three-Day (3)
Notice to Pay or Quit rent for September and October 2008.  Plaintiff consulted an
attorney who advised her to pay October's rent due to defendant MAH refusal of
plaintiff's September rent when tendered.

100.     On October 8, 2008, plaintiff dropped off the October 2008 rent at
defendant MAH's rent 'drop box'.  Defendant MAH returned to her unit to find the
October 2008 rent taped to her door in a white envelop from defendant Fitzgerald with a
note.

101.     On October 9, 2008, defendant F.F. Properties filed an unlawful detainer
action against plaintiff in the Superior Court of Alameda County for nonpayment of rent
represented by Kimball, Tirey, and St. John (hereinafter "Kimbal"), and assigned to
Attorney Jane Creason (hereinafter "Creason").

102.     On October 21, 2008, the superior court sent plaintiff a notice for trial set
for November 17, 2008.

103.     On October 31, 2008, plaintiff sent to the superior court her Request For A
Jury Trial.

104.     On November 4, 2008, the clerk of the court returned plaintiff's Request

For A Jury Trial as an untimely request.

105.    On November 5, 2008, defendants Kimball, Creason, Garcia, and Fitzgerald showed up to plaintiff's apartment to inspect it her unit. Defendants Kimball, Creason, Fitzgerald, and Garcia used HPD to harass plaintiff in doing so.

106.    On November 13, 2008, defendant Rolefson deprived plaintiff of a fair trial by ending it stating, "I thought this was going to take a few minutes." Defendant Rolefson instructed all parties to return on November 17, 2008, at 9A.

107.    On November 17, 2008, defendant Rolefson deprived plaintiff a fair trial by refusing her to use the defense of retaliatory eviction, submission of evidence, to wit, testimony, bank receipts, certified letters sent to defendant MAH, and checks showing proof she paid rent among other things, and accepting contradictory evidence submitted by defendants Kimball, Creason, and Fitzgerald.

108.    Defendant Rolefson denied repeatedly plaintiff's motions for Relief from Forfeiture stating, "If defendant [Drawsand] has the money, she should move somewhere else."

109.    On December 4, 2008, plaintiff successfully retained a stay of the eviction date after three filings in the superior court. The court renewed the eviction date to January 13, 2009.

110.    Between December 5, 2008, thru January 13, 2009, defendants MAH, Fitzgerald, Cabrera, Baldibad, and Orase LNU continued to harass, stalk, and create the nuisance. In addition, relatives of defendant Orase dwelled in unit #3308 above plaintiff's and continued the nuisance per instruction of defendants MAH and Fitzgerald.

111.    Between August 2008 thru January 2009, plaintiff made numerous contacts with Orion security to document the incidents. Orion reported all incidents by fax transmittal as they occurred to defendants MAH and Fitzgerald.

112.    In February 2009, plaintiff contacted HACA and defendant Barn about moving and the process. Defendant Barn did not return plaintiff's calls. Plaintiff filed a statement indicating that defendant Barn has strive to get her evict since becoming her Section 8 specialist.

113.    In March 2009, defendant Barn made contact with plaintiff after receiving the statement by sending a Termination of Program letter to plaintiff. Plaintiff requested an informal hearing, which defendant Barn denied repeatedly until contacting HUD.

114.    In June 2009, plaintiff received an informal hearing that defendant Barn interrupted repeatedly her testimony stating, "You can't consider her evidence" speaking to the informal hearing officer. In addition, defendant Barn had documents removed from plaintiff's discovery documents issued to support her claim for retaliatory eviction.

115.    The informal hearing officer concluded that plaintiff did not give false information as defendant Barn as the cause used to terminate her Section 8 status and that plaintiff should been granted a request to move.

## FIRST CLAIM

116.    As a proximate result of the actions of defendants, plaintiff has been denied the same rights as are enjoyed by other disabled recipients of federally subsidized assistance and her rights to equal housing opportunity in violation 42 U.S.C. §§ 3604(f)(1)(B) and (C), 3604(f)(2)(B) and (C), 24 C.F.R. §§ 982.53, 984.5.105(a),

984.104(c), and H.R. Rep. 100-711-24.

a. In June 2006, Section 8 Specialist Van Der Beek informed plaintiff that she had to obtain employment to remain eligible for the Section 8 subsidy in violation of the Department of Housing and Urban Development (HUD) policies. Plaintiff is a disabled veteran receiving disability, which qualified her for the federally subsidized financial assistance program Section 8.

b. In July 2007, Section 8 determined that plaintiff would be required to pay her full rent effective August 1, 2007, due to her employment status after her first annual recertification.

c. On August 6, 2007, plaintiff notified Section 8 Specialist Barn of her job termination. Specialist Barn failed to recertify plaintiff in order to update her status. Plaintiff received three or more Three-Day Notices to Pay or Quit because of the delay in her change of status by Section 8. Per documentation sent from defendants MAH and Dwyer, plaintiff received information that defendant Barn terminated her from the program.

## SECOND CLAIM

117. As a proximate result of the actions of defendants, plaintiff has been denied the same rights to contract as are enjoyed by white persons and her rights to equal housing opportunity in violation of 29 U.S.C. § 794 (Rehabilitation Act of 1973, Section 504), 42 U.S.C. §§ 1981, 1982, 1983, 3601 et seq. (Fair Housing Act), 12101 (Title II of the American with Disabilities Act).

## THIRD CLAIM

118.   As a proximate result of the actions of defendants, plaintiff has been denied her rights to equal housing opportunity when it breached the covenant for quiet enjoyment and possession in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et seq. among other federal laws.

## FOURTH CLAIM

119.   As a proximate result of the actions of defendants, plaintiff has been denied her rights to due process and equal protection of the law under the Fourteenth Amendment of the United States Constitution, Art. I, sections 1 and 7(a), of the California Constitution, California Penal Code § 647(k), 42 U.S.C. § 2000d et seq. among other federal laws.

## FIFTH CLAIM

120.   As a proximate result of the actions of defendants, defendants breached the contract made with plaintiff and denied her due process and equal protection of the law under the Fourteenth Amendment of the United States Constitution among other federal laws.

## SIXTH CLAIM

121.   As a proximate result of the actions of defendants, and without any contributing actions of plaintiff, plaintiff has suffered mental anguish, pain, and suffering due to harassment, stalking, assault, battery, trespass, invasion of privacy, domestic violence, vandalism and destruction of her personal and real property based on disability discrimination, sexual discrimination, racial discrimination, among other things in violation 42 U.S.C. §§ 3601 et seq. and 3604 et seq.

**SEVENTH CLAIM**

122.   As a proximate result of the actions of defendants, and without any

contributing actions of plaintiff, plaintiff has suffered the loss of housing assistance

through the federally-subsidizing program Section 8, because of defendants fraud upon

the court pursuant to People v. Zajic, 88 Ill.App.3d 477, 410 N.E.2d 626 (1980), People

v. Zajic, 88 Ill.App.3d 477, 410 N.E.2d 626 (1980), Kenner v. C.I.R., 387 F.3d 689

(1968), and Liteky v. U.S., 114 S.Ct. 1147, 1162 (1994).

**EIGTH CLAIM**

123.   As a proximate result of the actions of defendants, and without any

contributing actions of plaintiff, plaintiff has suffered malicious prosecution that has

damaged her credit rating among other things in violation of Rosenthal Fair Debt

Collection Practices §§ 806(2) and 807(7).

**PRAYER**

Plaintiff request:

1.   The departmental proceedings, and subsequent penalty, against Plaintiff be

declared a nullity.

2.   The court award Plaintiff the full compensation for the 14 months that she

was without a residence.

3.   Damages, both compensatory and punitive, in the amount of $5,000,000.00

to compensate the plaintiff and to ensure that these actions do not re-occur.

4.   Reasonable attorney's fees.

5.   All other relief that is appropriate under all of the circumstances.

Dated:  August 31, 2010

PAMELA DRAWSAND
Plaintiff